MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
GILBERTO MORALES BENITO and
JAVIER CANO, *individually and on behalf of*
*others similarly situated,*

|  |  |
|---|---|
| *Plaintiffs*, | **COMPLAINT** |
|  |  |
| -against- | **COLLECTIVE ACTION UNDER** |
|  | **29 U.S.C. § 216(b)** |
| ANASSA HOLDINGS LLC (D/B/A ANASSA | |
| TAVERNA), NICK TSOULOS, and VICTOR | **ECF Case** |
| FLORES, | |
|  |  |
| *Defendants*. | |

-------------------------------------------------------X

Plaintiffs Gilberto Morales Benito and Javier Cano , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Anassa Holdings LLC (d/b/a Anassa Taverna), ("Defendant Corporation"), Nick Tsoulos and  Victor Flores, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Anassa Holdings LLC (d/b/a Anassa Taverna), Nick Tsoulos, and Victor Flores.

2.       Defendants own, operate, or control a Greek restaurant, located at 200 E 60th Street, New York, NY 10022 under the name "Anassa Taverna".

3.     Upon information and belief, individual Defendants Nick Tsoulos and Victor Flores, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.     Plaintiffs were employed as a cook, busboy and food runner at the restaurant located at 200 E 60th Street, New York, NY 10022.

5.     Plaintiff Cano was ostensibly employed as a busboy and food runner. However, he was required to spend a considerable part of his work day performing non-tipped duties, including but not limited to folding napkins, cleaning cups, cleaning utensils, sweeping, cleaning tables, taking out the trash, cutting bread, and cleaning the bathroom  (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.     Defendants employed and accounted for Plaintiff Cano as a busboy and food runner in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Cano's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Cano's actual duties in payroll records by designating him as a busboy and food runner instead of a non-tipped employees. This allowed Defendants to pay Plaintiff Cano at the tipped credit rate and avoid paying him at the minimum wage rate he was entitled to receive.

12.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

13.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

14.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Greek restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

18.     Plaintiff Gilberto Morales Benito ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in Bronx County, New York.

19.     Plaintiff Morales was employed by Defendants at Anassa Taverna from approximately March 2015 until on or about October 19, 2020.

20.     Plaintiff Javier Cano ("Plaintiff Cano" or "Mr. Cano") is an adult individual residing in Bronx County, New York.

21.     Plaintiff Cano was employed by Defendants at Anassa Taverna from approximately February 2014 until on or about October 11, 2020.

*Defendants*

22.     At all relevant times, Defendants owned, operated, or controlled a Greek restaurant, located at 200 E 60th Street, New York, NY 10022 under the name "Anassa Taverna".

23.     Upon information and belief, Anassa Holdings LLC (d/b/a Anassa Taverna) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 200 E 60th Street, New York, NY 10022.

24.     Defendant Nick Tsoulos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nick Tsoulos is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Nick Tsoulos possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

25.     Defendant Victor Flores is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Victor Flores is sued individually in his capacity as a manager of Defendant Corporation. Defendant Victor Flores possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

26.     Defendants operate a Greek restaurant located in the Upper East side section of Manhattan in New York City.

27.    Individual Defendants, Nick Tsoulos and Victor Flores, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

28.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

29.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

30.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

31.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

32.    Upon information and belief, Individual Defendants Nick Tsoulos operate Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e) operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

33. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

34. In each year from 2014 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

36. Plaintiffs are former employees of Defendants who were employed as a cook, and ostensibly as a busboy and food runner. However, Plaintiff Cano , who ostensibly was employed as a busboy and food runner, spent over 20% of his work days performing the non-tipped duties described above.

37.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Gilberto Morales Benito*

38.     Plaintiff Morales was employed by Defendants from approximately March 2015 until on or about October 19, 2020.

39.     Defendants employed Plaintiff Morales as a cook.

40.     Plaintiff Morales regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

41.     Plaintiff Morales's work duties required neither discretion nor independent judgment.

42.     From approximately March 2015 until on or about September 2016, Plaintiff Morales worked from approximately 7:00 a.m. until on or about 3:00 p.m., 6 days a week (typically 48 hours per week).

43.     From approximately October 2016 until on or about October 2018, Plaintiff Morales worked from approximately 12:00 p.m. until on or about 9:00 p.m. to 10:30 p.m., 6 days a week (typically 54 hours per week).

44.     From approximately November 2018 until on or about March 15, 2020, Plaintiff Morales worked from approximately 3:00 p.m. until on or about 12:00 a.m., 6 days a week (typically 54 hours per week).

45.     From approximately July 2020 until on or about October 19, 2020, Plaintiff Morales worked from approximately 3:00 p.m. until on or about 9:00 p.m. to 10:30 p.m., 3 to 4 days a week (typically 18 to 24 hours per week).

46.     Throughout his employment, Defendants paid Plaintiff Morales his wages by check.

47.     From approximately March 2015 until on or about December 2016, Defendants paid Plaintiff Morales $9.00 per hour.

48.     From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Morales $11.00 per hour.

49.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Morales $13.00 per hour.

50.     From approximately January 2019 until on or about October 2020, Defendants paid Plaintiff Morales $15.00 per hour.

51.     Plaintiff Morales's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

52.     For example, Defendants required Plaintiff Morales to continue working an additional hour past his scheduled departure time once a week and did not pay him for the additional time he worked.

53.     Defendants never granted Plaintiff Morales any breaks or meal periods of any kind.

54.     Nevertheless, Defendants deducted $32 from Plaintiff Morales's weekly paycheck for meals he never ate.

55.     Plaintiff Morales was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

56.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Morales regarding overtime and wages under the FLSA and NYLL.

57.     Defendants did not provide Plaintiff Morales an accurate statement of wages, as required by NYLL 195(3).

58.     In fact, Defendants adjusted Plaintiff Morales's paystubs so that they reflected inaccurate wages and hours worked.

59.     Defendants did not give any notice to Plaintiff Morales, in English and in Spanish (Plaintiff Morales's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

60.     Defendants required Plaintiff Morales to purchase "tools of the trade" with his own funds—including one spatula, peelers, and one knife.

*Plaintiff Javier Cano*

61.     Plaintiff Cano was employed by Defendants from approximately February 2014 until on or about October 11, 2020.

62.     Defendants ostensibly employed Plaintiff Cano as a busboy and food runner.

63.     However, Plaintiff Cano was also required to spend a significant portion of his workday performing the non-tipped duties described above.

64.     Although Plaintiff Cano ostensibly was employed as a busboy and food runner, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

65.     Plaintiff Cano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

66.     Plaintiff Cano's work duties required neither discretion nor independent judgment.

67.     From approximately November 2014 until on or about 2018, Plaintiff Cano worked as a busboy from approximately 10:30 a.m. until on or about 10:30 p.m. to 11:00 p.m., 3 days a week and from approximately 10:30 a.m. until on or about 4:30 p.m., 2 days a week (typically 46.5 hours per week).

68.     From approximately 2018 until on or about March 16, 2020, Plaintiff Cano worked as a food runner from approximately 11:00 a.m. until on or about 9:00 p.m. to 10:30 p.m., 3 days a week and from approximately 11:00 a.m. until on or about 3:30 p.m. to 4:00 p.m., 2 days a week (typically 38.75 hours per week).

69.     From approximately July 1, 2020 until on or about October 11, 2020, Plaintiff Cano worked as a busboy from approximately 10:30 a.m. until on or about 4:30 p.m., 5 days a week (typically 30 hours per week).

70.     Throughout his employment, Defendants paid Plaintiff Cano his wages by check.

71.     From approximately November 2014 until on or about 2018, Defendants paid Plaintiff Cano $7.25 per hour.

72.     From approximately 2018 until on or about October 11, 2020, Defendants paid Plaintiff Cano $10.00 per hour.

73.     Plaintiff Cano's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

74.     For example, Defendants required Plaintiff Cano to continue working an additional 20 minutes past his scheduled departure time every day and did not pay him for the additional time he worked.

75.     Nevertheless, Defendants deducted $14 from Plaintiff Cano's weekly paycheck for meals he never ate.

76.     Plaintiff Cano was never notified by Defendants that his tips were being included as an offset for wages.

77.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cano's wages.

78.     Plaintiff Cano was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

79.     Defendants required Plaintiff Cano to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

80.     On a number of occasions, Defendants required Plaintiff Cano to sign a document, the contents of which he was not allowed to review in detail.

81.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cano regarding overtime and wages under the FLSA and NYLL.

82.     Defendants did not provide Plaintiff Cano an accurate statement of wages, as required by NYLL 195(3).

83.     Defendants did not give any notice to Plaintiff Cano, in English and in Spanish (Plaintiff Cano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

84.     Defendants required Plaintiff Cano to purchase "tools of the trade" with his own funds—including shirts and pants.

*Defendants' General Employment Practices*

85.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

86.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

87.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

88.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

89.     Defendants required Plaintiff Cano and all other busboys and food runners to perform general non-tipped tasks in addition to their primary duties as busboys and food runners.

90.     Plaintiff Cano and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

91.      Plaintiff Cano's duties were not incidental to  his occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

92.     Plaintiff Cano and all other tipped workers were paid at the tipped credit rate by Defendants.

93.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Cano's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

94.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips

are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

95.     In violation of federal and state law as codified above, Defendants classified Plaintiff Cano and other tipped workers as tipped employees, and paid them at the tipped credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

96.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

97.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

98.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as busboys and food runners for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Morales worked.

99.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

100.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

101.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

102.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

103.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

104.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

105.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

106.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

107.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

108.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

109.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

110.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

111.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

112.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

113.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

114.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

115.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

116.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA**

117.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

118.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

119.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

120.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE NEW YORK MINIMUM WAGE ACT**

121.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

122.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs,

controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

123.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

124.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

125.     Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

126.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

127.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

128.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

129.     Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

130.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

131.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

132.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

133.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

134.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

135.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

136.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

137.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

138.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

139.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

140.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

141.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

142.     Plaintiffs were damaged in an amount to be determined at trial.

### NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

143.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

144.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

145.    Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

146.    The deductions made from Plaintiffs' wages were not authorized or required by law.

147.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)       Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)       Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)       Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)       Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)       Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)       Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)       Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)       Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)       Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

December 2, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 27, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Javier Cano

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              27 de Octubre 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 27, 2020

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Gilberto Morales Benito

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    27 de octubre de 2020

*Certified as a minority-owned business in the State of New York*